# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JAMES C. WALDORF, M.D.**,

      *Plaintiff*,

  v.

**MAYO CLINIC**, *a Minnesota non-profit corporation;*
**MAYO CLINIC JACKSONVILLE,** *a Florida non-profit corporation; and*
**MAYO CLINIC FLORIDA,** *a Florida non-profit corporation*

      *Defendants*.

Case No. 3:24-cv-00657

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY (DOC. 40)

Defendants, Mayo Clinic, Mayo Clinic Jacksonville, and Mayo Clinic Florida (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Response in Opposition to Plaintiff James C. Waldorf, M.D.'s ("Dr. Waldorf") Renewed Motion to Compel Discovery (Doc. 40) (the "Motion").

## <u>INTRODUCTION</u>

This single-plaintiff lawsuit involves Dr. Waldorf's decision to administer Botulinum Toxin to his romantic partner at work without charge and without proper documentation, in direct violation of Defendants' Drug

Diversion Reporting and Response Policy. Despite the factual simplicity of this case—and despite that Defendants have provided Dr. Waldorf with more than 6,000 pages of documents responsive to his 21 sets of Requests for Production—Dr. Waldorf, inexplicably, remains focused on obtaining a set of documents that is completely unrelated to the facts at hand.

Dr. Waldorf is so determined to view these documents, in fact, that he asks this Court for the second time to change the rules of discovery, to stretch Eleventh Circuit precedent beyond recognition, and to adopt an unworkable and illogical view of discoverable evidence in employment discrimination cases. Because the requests identified in Dr. Waldorf's Motion target information that is utterly irrelevant to the claims and defenses at issue, Defendants ask this Court to deny Dr. Waldorf's Motion and to put an end to his interminable fishing expedition. To rule otherwise would amount not only to limitless future discovery in this case, but also to an untenable sea change to the scope of discovery in employment discrimination cases at large. This Court should not countenance Dr. Waldorf's inappropriate demand.

## RELEVANT BACKGROUND

### I.    Dr. Waldorf's Employment

The factual background of this case is straightforward and largely undisputed. Prior to his July 18, 2023 resignation, Dr. Waldorf was

employed by Defendant Mayo Clinic Jacksonville. *See* Complaint (Doc. 1) ("Compl.") ¶ 8; Ex. 1 to Compl. Dr. Waldorf's resignation came after an investigation—conducted by Mayo Clinic Jacksonville's Drug Diversion Response Team ("DDiRT")—uncovered that Dr. Waldorf administered Botox to his life partner, another employee of Mayo Clinic Jacksonville (Pamela Lovett), without charging her and without properly documenting, charting, or recording the procedure. Compl. ¶¶ 11, 14–16, 24, 29. DDiRT concluded that Dr. Waldorf's conduct violated the applicable Drug Diversion Reporting and Response Policy (the "Diversion Policy"), Compl. ¶¶ 11, 14–16, 24, 29, and Mayo Clinic Jacksonville decided to end Dr. Waldorf's employment as a result. Compl. ¶ 29. Dr. Waldorf was offered the opportunity to resign in lieu of termination, and he did so. Compl. ¶ 29.

## II.    Dr. Waldorf's Claims

On June 28, 2024, Dr. Waldorf filed a Complaint alleging claims for age discrimination under the Age Discrimination in Employment Act and the Florida Civil Rights Act, as well as a claim for third-party retaliation under the Equal Pay Act, each in connection with his July 2023 resignation.

## III.    The At-Issue Discovery Requests and Dr. Waldorf's First Motion

On August 28, 2024, Dr. Waldorf served his First Requests for Production to Mayo Clinic Jacksonville, attached to this Response as

**Exhibit A**. Dr. Waldorf's Motion takes issue with Mayo Clinic Jacksonville's responses and objections to Request Nos. 12, 13, 15, 17, and 30–33, which Dr. Waldorf states are "narrowed" as presented in his Motion. In sum, Dr. Waldorf seeks to compel production of the following categories of documents:

- **Unrelated Investigatory Files:** Complete investigatory files for the following alleged incidents:

  o Any investigation of Dr. Brian Rinker for his alleged involvement in a sexual relationship with a visiting medical professional (Request No. 12);
  o Any investigation of Dr. Brian Rinker for his alleged involvement in reconstructive surgery performed without patient consent (Request No. 13);
  o Any investigation of Dr. Emmanuel Gabriel for his alleged involvement in "wrong site surgery" or reconstructive surgery performed without patient consent (Request No. 15);[1] and
  o Any investigation of Dr. Juan Carlos Martinez for his alleged involvement in throwing medical instruments or engaging in reckless or inappropriate behavior during surgery (Request No. 17).

- **Unrelated Rules and Policies:** Copies of any and all rules or policies violated by Dr. Brian Rinker, Dr. Emmanuel Gabriel, and Dr. Juan Carlos Martinez related to the conduct alleged in Request Nos. 12, 13, 15, and 17. (Request Nos. 30–33).

---

[1] In addition to the relevance issues detailed in this Response, given the unique nature of the circumstances alleged in Request Nos. 13 and 15, production or disclosure of material responsive to these requests would also involve disclosure of health information protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.* The circumstances alleged in Request Nos. 13 and 15 are so unique that, even if redacted, responsive materials would encompass information that could identify a patient of Defendants and information pertaining to that patient's healthcare and health services, in violation of HIPAA's protections.

In Dr. Waldorf's First Motion to Compel (Doc. 30) ("Dr. Waldorf's First Motion"), in addition to the documents detailed above, Dr. Waldorf sought numerous other irrelevant documents and documents over which he had not properly conferred with defense counsel. *See generally* Dr. Waldorf's First Motion. This Court denied Dr. Waldorf's First Motion without prejudice on January 27, 2025, agreeing with Defendants that Dr. Waldorf did not properly confer over certain requests, and that the Court's ruling on Defendants' Motion to Strike (Doc. 26) was not dispositive of the ongoing discovery dispute. (Doc. 37).

Dr. Waldorf focuses his current Motion on Request Nos. 12, 13, 15, 17, and 30–33 (the "Requests"). Dr. Waldorf's more limited focus does nothing to attenuate Defendants' core objection: Dr. Waldorf's Requests demand irrelevant, non-discoverable information. For the reasons detailed herein, Dr. Waldorf's Motion should be dismissed in its entirety.

## THE DISCOVERY STANDARD

The disposition of Dr. Waldorf's Motion turns on the permissible scope of discovery in a single-plaintiff employment discrimination/retaliation suit. As in all federal court matters, the scope and boundaries of discovery are "defined by relevancy and proportionality." *Jolly v. Hoegh Autoliners Shipping AS*, No. 3:20-cv-1150-J-34PDB, 2020 WL 13268120, at \*1 (M.D. Fla. Nov. 19, 2020) (citing Fed. R. Civ. P. 26(b)(1)); *see also Hickman v.*

*Taylor*, 329 U.S. 495, 501 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries."). While parties may freely obtain discovery into matters that are ***relevant*** and ***proportional*** to their claims or defenses, the discovery rules do not provide a party an "unlimited license[] for fishing expeditions," and do not allow litigants to "roam in the shadow zones of relevancy" or to "explore matters which do not presently appear germane on the theory that they may conceivably become so." *Benz v. Crowley Logistics, Inc.*, 3:15-cv-728-J-25MCR, 2016 WL 11587289, at *2 (M.D. Fla. June 17, 2016) (emphasis added) (internal citations omitted). To the contrary, the Eleventh Circuit has made clear that "[t]he information sought [in discovery] ***must be relevant***[,]" and that discovery requests should thus "be tailored ***to the issues involved in the particular case***." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992) (emphasis added).

In the context of a motion to compel, the initial burden rests with the moving party to provide "proof that the information sought is in fact relevant." *Benz*, 2016 WL 11587289, at *2 (citing *Moore v. Lender Processing*, No. 3:12-cv-205-J-32MCR, 2013 WL 2447948 at *2 (M.D. Fla. June 5, 2013)). If the requesting party fails to do so, or if the non-moving party provides sufficient justification for opposing production, the court may

deny the motion. *Id.*; *see also Jones v. Z.O.E. Enters. of Jax, Inc.*, No. 3:11-cv-3777-J-32MCR, 2012 WL 3065384, at *1–2 (M.D. Fla. July 27, 2012)

## **LEGAL ARGUMENT**

Dr. Waldorf is not entitled to the information sought in Request Nos. 12, 13, 15, 17, and 30–33 (the "Requests"), which seek documents that have absolutely nothing to do with his age discrimination and retaliation claims. Perhaps because of this glaring relevance deficiency, Dr. Waldorf resorts to legal gymnastics to argue for drastic changes to the discovery rules and the function of evidence related to an employer's treatment of other employees in the discrimination context. Along the way, Dr. Waldorf misrepresents the record, mischaracterizes Defendants' objections and conferral statements, twists and misrepresents case law, and improperly downplays the gravity and implications of the issue before the Court. Dr. Waldorf's Motion represents a significant and improper overreach and should be dismissed.

## **I.    The Requests Seek Irrelevant Information.**

The Requests demand access to information that is of no use in furthering Dr. Waldorf's claims or Defendants' defenses. While the irrelevance and overbreadth of the sought-after information are largely self-evident, two key points warrant special emphasis:

**First,** the categories of alleged misconduct suggested in the Requests—namely, alleged surgical errors and alleged workplace

interpersonal and/or sexual conduct—are wholly different in nature from the misconduct Dr. Waldorf engaged in (i.e., drug diversion). As such, had the misconduct alleged in the Requests occurred, it would have implicated different policies, rules, internal investigatory bodies, and disciplinary precedent than those implicated by Dr. Waldorf's conduct. *See* **Exhibit B**, Declaration of Connie Kuenzinger ("Kuenzinger Decl."), ¶¶ 5–8; **Exhibit C**, Declaration of Deborah Brown ("Brown Decl."), ¶¶ 4–6. None of the alleged misconduct implicated by the Requests would have been investigated by DDiRT, the body that investigated and made conclusions and disciplinary recommendations regarding Dr. Waldorf's misconduct. *See* Ex. B, Kuenzinger Decl. ¶¶ 5–8; Ex. C, Brown Decl. ¶ 6. Rather, if they occurred, such incidents would have been investigated by Human Resources, or by the Department of Risk Management. *See* Ex. B, Kuenzinger Decl. ¶¶ 6–8; Ex. C, Brown Decl. ¶ 4.

In a futile attempt to bypass this reality and manifest a link between his resignation and the conduct alleged in the Requests, Dr. Waldorf resorts to mischaracterizing the record. Namely, Dr. Waldorf erroneously asserts that Dr. Gianrico Farrugia—who Dr. Waldorf alleges "participated in . . . the decision not to fire Dr. Martinez"—was also involved in "the decision to fire Dr. Waldorf[.]" Motion at p. 22. This is false. Dr. Gianrico Farrugia was not a decision-maker with respect to either the investigation into Dr.

Waldorf's misconduct *or* Dr. Waldorf's ultimate separation from Mayo Clinic Jacksonville. *See* **Exhibit D**, Declaration of Kent Thielen, M.D. ("Dr. Thielen Decl."), ¶¶ 5–6. The document Dr. Waldorf refers to (Doc. 40-7), which states only that Dr. Kent Thielen "plan[ned] to given an overview [of Dr. Waldorf's misconduct and the decision to end his employment] to Dr. Farrugia," is consistent with this fact. Dr. Waldorf cannot use this feigned link as a means to skirt the "ultimate and necessary boundaries" that limit the scope of discovery. *Hickman*, 329 U.S. 495, 507 (1947)).[2]

**Second,** none of the physicians identified in the Requests engaged in behavior that is related, or similar in any way, to Dr. Waldorf's drug diversion and impermissible Botox use. *See* **Exhibit E**, Mayo Clinic Jacksonville's Verified Second Amended Responses to Plaintiff's First Set of

---

[2] Dr. Waldorf similarly misrepresents the testimony of Dr. Brian Rinker, purportedly to demonstrate the "importance" of the documents at issue in his Motion. Dr. Waldorf alleges that Dr. Rinker provided contradictory testimony regarding his relationship with an individual who at one time was a visiting observer physician at Mayo Clinic Jacksonville. *See* Motion at p. 15. Dr. Rinker's testimony is not contradictory. In deposition, Dr. Waldorf's counsel first asked Dr. Rinker if he had a relationship "with anyone *that was visiting* at Mayo Clinic[.]" Doc 40-5, Deposition of Dr. Brian Rinker ("Rinker Dep.") 57:10–11 (emphasis added). Dr. Rinker responded "No." *Id.* 57:12. Later, Dr. Waldorf's counsel asked if Dr. Rinker had "any kind of relationship with a visiting female who spoke Spanish and English . . . in 2020 or thereabouts?" *Id.* 60:15–18. Dr. Rinker responded, "I did." *Id.* 60:19. Dr. Rinker then went on to clarify that his relationship with this individual began *after* she concluded her time as a visiting observer physician. *Id.* 61:8–16, 67:9–10. Consequently, Dr. Rinker's testimony that he did not have a relationship "with anyone *that was visiting* at Mayo Clinic" is consistent with his later testimony that his relationship did not begin while the observer physician "*was visiting* at Mayo Clinic." *Id.* 57:10–11 (emphasis added). Dr. Waldorf's characterization of this testimony as not "forthcoming" is not borne out by the record. Regardless, as stated above, none of this information has any bearing whatsoever on Dr. Waldorf's claims or Defendants' defenses.

Interrogatories at pp. 19–21. Dr. Waldorf does not allege that Drs. Rinker, Gabriel, or Martinez have *ever* been investigated by DDiRT for alleged, suspected, or actual violations of the Diversion Policy or any similar policy involving theft or the unauthorized use or administration of Defendants' pharmaceuticals or property. Similarly, Dr. Waldorf has not been accused in this lawsuit or otherwise of engaging in behavior similar to the conduct he alleges Drs. Rinker, Gabriel, and Martinez engaged in.

At bottom, none of the individuals or circumstances identified in the Requests bear *any* relevance to the circumstances that led to Dr. Waldorf's separation from Mayo Clinic Jacksonville. They seek information about alleged misconduct that is distinct from the administration of Botox or the Diversion Policy more generally, and that is subject to an entirely different investigatory and disciplinary scheme. Courts routinely deny motions to compel—like Dr. Waldorf's here—that demand information about individuals who have no connection to the plaintiff or the at-issue claims. *See, e.g.*, *Taylor v. Farm Credit of N. Fla. ACA*, No. No. 21-13807, 2022 WL 4493044 at *4 (11th Cir. 2022) (affirming district court's decision to limit scope of discovery in Section 1981 discrimination case to information pertaining to individuals similar to plaintiff); *Simionescu v. Bd. of Trustees of Univ. of Ala.*, 482 F. App'x 428, 431 (11th Cir. 2012) (affirming district court's denial of motion to compel documents related to other employees in

discrimination case because employees "had not received comparable negative reviews of their respective performance" as had plaintiff); *Richards v. City of Atlanta, Ga.,* No. 1:19-cv-03963, 2021 WL 3056851 at \*4–5 (N.D. Ga. Jan. 15, 2021) (limiting scope of discovery to individuals similar to plaintiff); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) (noting "the need for broad discovery should not necessitate unreasonably broad discovery requests" and limiting discovery requests to employees who had committed similar violations to plaintiff); *see also EEOC v. Wencor Group LLC*, No. 3:17-cv-00139, 2018 WL 11674794, at \*4 (N.D. Ga. July 2, 2018) (internal citations omitted) ("While Rule 26 . . . provides that information 'within the scope of discovery need not be admissible in evidence to be discoverable,' the information sought must be relevant to a claim or defense and proportional to the needs of the case, and the Eleventh Circuit has affirmed the limitation of discovery in discrimination cases to relevant comparators.").

This is true whether the information is sought to help a plaintiff establish the existence of "similarly situated" comparators for purposes of establishing a *prima facie* case under *McDonnell Douglas*[3] **or** to prove the

---

[3] *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) set forth a burden-shifting framework that can be used to assess employment discrimination claims at summary judgment. In order to establish a *prima facie* case under the *McDonnell Douglas* framework, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably

ultimate question of whether discrimination occurred under a "convincing mosaic" of discrimination theory. In other words, if the information sought is not relevant to a plaintiff's claim—regardless of what theory or framework the plaintiff relies on—the motion to compel must be denied. In this case, Dr. Waldorf's "discrimination claim[] w[as] based on [Defendants' response to his drug diversion], so the natural focus of any meaningful comparison would be other [individuals accused of drug diversion]." *Taylor*, 2022 WL 4493044, at *4. Unrelated investigations concerning Dr. Rinker's, Dr. Gabriel's, and Dr. Martinez's alleged conduct simply do not bear on the ultimate question of whether Defendants' treatment of Dr. Waldorf's drug diversion was discriminatory or retaliatory.

## II. *Tynes v. Florida Department of Juvenile Justice* Did Not Eliminate The Requirement Of Relevance Or Otherwise Change The Discovery Standard

In the face of these obvious relevance issues, Dr. Waldorf's continued insistence that *Tynes v. Florida Department of Juvenile Justice*, 88 F.4th 939 (11th Cir. 2023) entitles him to the discovery sought in this case is troubling. *See* Motion at pp. 17–18. As an initial matter, *Tynes'* unique procedural posture distinguishes it from this discovery dispute. In fact, *Tynes* did not even involve the scope of discovery. To the contrary, in *Tynes*, the

---

than "similarly situated" individuals outside his protected class (known as "comparators").

Eleventh Circuit was tasked with reviewing a district court's denial of an employer's motion for judgment as a matter of law following trial. *Tynes*, 88 F.4th at 943. By way of further explanation, after a jury returned a verdict in favor the employee-plaintiff, the employer moved for judgment as a matter of law, arguing only that verdict was improper because the comparators plaintiff proffered at trial did not meet the definition of true "*McDonnell Douglas*" comparators. *Id.*

In reviewing the district court's decision, the Eleventh Circuit focused on a specific issue; namely "whether the evidentiary framework set out in *McDonnell Douglas* is a stand-in for the ultimate question of liability in Title VII discrimination cases." 88 F.4th at 941. The court answered "no," noting that a plaintiff who cannot satisfy the *McDonnell Douglas* framework "may still be able to prove her case with what [courts] have sometimes called a 'convincing mosaic of circumstantial evidence[.]'" *Id.* at 946 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327–28 (11th Cir. 2011)).[4]

Contrary to Dr. Waldorf's suggestion, this simple holding did not enact a radical change to the definition of relevance, nor did it drastically expand the bounds of discovery such that a plaintiff in Dr. Waldorf's

---

[4] The Eleventh Circuit also noted that, **even when** using the "convincing mosaic" approach, the evidence a plaintiff relies upon must be "**relevant** and admissible." *Id.* at 946–47, n.2 (emphasis added).

position may access, without limit, investigatory documents pertaining to *any* employee suspected of *any* misconduct or wrongdoing, regardless of whether there is any connection to the plaintiff's alleged misconduct. *See generally Tynes*. No case examining or applying *Tynes* has condoned or suggested such an extreme reading. Yet, this extreme, boundless reading is exactly what Dr. Waldorf urges this Court to endorse here.

Defendants' position, in contrast, is entirely consistent with *Tynes*, despite Dr. Waldorf's continued attempt to distort the arguments articulated in Defendants' prior briefing and conferral communications. To be clear: Defendants *do not argue* that a party may only seek discovery regarding individuals who are strict *McDonnell Douglas* comparators. Rather, Defendants merely reiterate (and seek to apply) the authoritative principle that the scope of discovery is limited to information that *is relevant* to the underlying facts of a given case.[5]

While ultimately immaterial to the Eleventh Circuit's holding in *Tynes*, an assessment of the individuals whom the *Tynes* plaintiff sought to use as

---

[5] To that end, Defendants have produced more than 5,000 pages of documents comprising the investigative files for all employees suspected of drug diversion (the misconduct that led to Dr. Waldorf's employment separation) since January 1, 2018. It is Defendants' position that these employees are not strict *McDonnell Douglas* comparators and do not meet the *Lewis* standard. Nonetheless, unlike the documents sought in the Requests, investigative files regarding conduct similar to that engaged in by Dr. Waldorf could ostensibly bear *some* relevance to Dr. Waldorf's case. That said, Defendants reserve the right to object to the purported actual relevance or admissibility of any document or category of documents produced in this lawsuit.

comparators further underscores the reality that *Tynes* does not support Dr. Waldorf's position in this dispute. As opposed to the individuals about whom Dr. Waldorf seeks discovery, the *Tynes* plaintiff shared meaningful similarities with the individuals she sought to use as comparators—they each held the same position as Tynes and they each had a documented history of performance issues similar to those that led to the plaintiff's termination. *See Tynes v. Fla. Dep't of Juv. Just.*, No. 18-62891, 2020 WL 13016806, at *4–5 (S.D. Fla. May 29, 2020). With these similarities mind, the Eleventh Circuit noted that while the proffered comparators may not have been so identical as to serve as true comparators under *McDonnell Douglas*, evidence related to the employer's treatment of these relatively similar individuals might still be probative of the ultimate question of discrimination. *Tynes*, 88 F.4th at 947–48.

Similarly, in *Jenkins v. Nell*, 26 F.4th 1243 (11th Cir. 2022), the employee considered as part of the plaintiff's "convincing mosaic" (last name Jones) violated ***the same rule*** the employer terminated plaintiff Jenkins for violating. *Jenkins*, 26 F.4th at 1251. The court concluded that Jones was not a strict comparator under *McDonnell Douglas*, because "the circumstances surrounding [Jones'] misconduct were not the same or substantially similar as Jenkins." *Id.* at 1250. In other words, Jones violated the ***same*** rule as Jenkins, but in a different way. *Id.* In turning to Jenkins' "convincing mosaic," the court considered the defendant's treatment of Jones "relevant," because, while Jones

15

was not a formal comparator under *McDonnell Douglas*, he nonetheless "committed a Rule A-6 violation (like Jenkins)." *Id.* at 1250–51.

Dr. Waldorf's misstates *Jenkins*' facts and holding. Specifically, Dr. Waldorf incorrectly claims that, in finding that the plaintiff demonstrated a convincing mosaic of discrimination sufficient to survive summary judgment, "the court relied in part on the employer's more favorable treatment of employees who did not meet the *Lewis* standard ***because they had not 'engaged in similar misconduct' to the plaintiff's***[.]" Motion at p. 17 (emphasis added). ***This is not true.*** The court's "no similar misconduct" language did not refer to Jones. Rather, it referred to two other employees (last names Jackson and Saussy) who the court ***did not*** consider as part of Jenkins' "convincing mosaic" of discrimination. *Id.* at 1250–51.

Finally, in *Lewis* (the panel decision cited by Dr. Waldorf), while the employees used in the plaintiff's "convincing mosaic" were not strict comparators under *McDonnell Douglas*, they were allegedly treated more favorably than the plaintiff with respect to the ***same underlying conduct***— failing to provide evidence through a test or certificate that they possessed the physical ability required for the their jobs. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1187–88 (11th Cir. 2019).

The individuals about whom Dr. Waldorf seeks discovery do not share the same pertinent similarities to Dr. Waldorf – i.e., their alleged misconduct

bears no connection to the drug diversion Dr. Waldorf admittedly engaged in. As a result, evidence of their treatment is simply ***not*** probative of the ultimate question of discrimination in this case.

## III.    Dr. Waldorf's Approach To Discovery Is Unworkable And Logically Unsound.

The practical and logical issues with Dr. Waldorf's approach are also manifest. Dr. Waldorf insists he is entitled to information about any individual he speculates engaged in misconduct that (in his estimation) is "worse" than substantiated drug diversion. However, a plaintiff's own subjective assessment that his conduct was, in so many words, "not that serious," is not an appropriate or feasible barometer for determining the permissible scope of discovery in an employment discrimination matter.[6]

To the contrary, Dr. Waldorf's proposed approach to discovery in employment discrimination cases would create an untenable situation in

---

[6] Unsurprisingly, the only case Dr. Waldorf cites to support this position, *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991), *see* Motion at pp. 19-20, is a decades-old out-of-circuit case that did not involve alleged employment discrimination. Instead, *Coughlin* is a First Amendment retaliation case in which two public employees alleged that they were discharged in retaliation for exercising free speech. Specifically, the plaintiffs claimed that the individual defendant, Sheriff Lee, terminated them for engaging in political activities that undermined Lee. As relevant here, the court held that evidence showing Lee did not discipline certain employees who publicly supported him but who engaged in other forms of misconduct could have some relevance to the question of whether Lee terminated the plaintiffs for their political activities. Thus, *Coughlin* is inapposite not only because it does not involve application of the ADEA or any federal employment or anti-discrimination statute but also because it involved the potential comparison of employment decisions made by ***one*** individual (Lee). Such is not the case here, as the alleged incidents involving Drs. Rinker, Gabriel, and Martinez would not have investigated or handled by DDiRT.

17

which discovery in *every* employment discrimination case involving discipline would be permitted regarding any individual that had ever been accused of or "violated [an Employer's] rules," *see* Motion at p. 1, regardless of whether such alleged conduct pertained in any way to a plaintiff's alleged misconduct or his/her claims. Dr. Waldorf attempts to dodge the obvious impermissibility of his position by stating that the Requests in this case are limited to Drs. Rinker, Gabriel, and Martinez. However, to accept Dr. Waldorf's position is to necessarily extend discovery beyond these specific individuals. Dr. Waldorf's theory of why the information sought here is "relevant" necessarily hinges on an argument that information sought about *anyone* who has engaged in *any* misconduct is somehow "relevant." Practically, this means that an order granting Dr. Waldorf's Motion would ostensibly authorize additional rounds of requests for production that ask for more sweeping discovery—*e.g.*, anyone who has committed a medical error of any kind in the last 10 years, anyone who has violated any number of unrelated policies in the last 10 years, etc.—even though none of these circumstances bear any relevance to the claims and defenses at issue in this litigation. Such a result cannot be squared with the inalterable principle that discovery is limited to information that *is actually relevant* to the underlying facts of a given case.

The logical flaws stemming from Dr. Waldorf's approach are equally concerning. At its core, "[t]he purpose of a comparator [or other evidence related to the treatment of other employees] is to 'eliminate confounding variables' in order to 'isolate the critical independent variable,' namely the presence of discrimination." Brief of the Leadership Conference on Civil and Human Rights as Amicus Curiae in Support of Petitioner at 24, *Young v. UPS,* 135 S. Ct. 1338 (2015) (No. 12-1226) (quoting *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). However, "[a]n employer is well within its rights to accord different treatment to employees who are differently situated . . . *e.g.*, who engaged in different conduct..." *Lewis*, 918 F.3d at 1228. Consequently, when there are stark differences between a plaintiff and another employee, confounding variables run rampant, and comparison fails to assist in "isolat[ing]" the "the presence of discrimination." Leadership Conference Brief at 24, (quoting *Humphries,* 474 F.3d at 405).

The myriad differences between the misconduct that lead to Dr. Waldorf's employment separation and the misconduct he claims Drs. Rinker, Martinez, and Gabriel engaged in make any hypothetical comparison useless, and thus, make the Requests irrelevant to this litigation. Dr. Waldorf's refrain that the at-issue information could one day

become part of his "convincing mosaic of circumstantial evidence" does nothing to cure this logical flaw.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Dr. Waldorf's Motion to Compel Discovery in its entirety.

Dated: March 31, 2025                    **FOLEY & LARDNER LLP**

*/s/ Larry S. Perlman*
Larry S. Perlman
Florida Bar No. 91934
lperlman@foley.com
lsullivan@foley.com
One Biscayne Tower
2 South Biscayne Blvd., Suite 1900
Miami, FL 33131
Telephone: (305) 482-8400

Mary Caroline Cravatta
Florida Bar No. 125712
mcravatta@foley.com
ctavarez@foley.com
301 E. Pine Steet, Suite 1200
Orlando, FL 32801
Telephone: (407) 423-7656

McKenzie L. Ahmet
Wisconsin Bar No. 1119284
(admitted *pro hac vice*)
mahmet@foley.com
mmraz@foley.com
150 E. Gilman Street, Suite 5000
Madison, WI 53711
Telephone: (608) 258-4319

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 31, 2025, a copy of the foregoing

was served on all counsel of record, as identified below:

Scott Thomas Fortune
FORTUNE LAW OFFICES, PA.
814 1st Steet N., Suite 100
Jacksonville Beach, FL 32250
sfortune@fortunelegal.com

Michael E. Lockamy
BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
mel@bedellfirm.com

John G. Woodlee
BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
jgw@bedellfirm.com

/s/ *McKenzie L. Ahmet*
Attorney