# EXHIBIT 2

# Medication Diversion Investigation User Guide

## Medication Diversion Prevention Subcommittee

**Editors:**

Mike Ramirez

Alissa Voils

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

# Table of Contents

Purpose ........................................................................................................................... 1

Definitions ..................................................................................................................... 1

Disclosure of Conflict of Interest ............................................................................. 2

Initial Intake ................................................................................................................. 2

Preliminary Investigation .......................................................................................... 2

Preliminary Notifications .............................................................................................. 4

Initial DDIRT Review ................................................................................................. 4

Evidence Collection .................................................................................................... 5

Roles in Evidence Collection ........................................................................................ 6

DDIRT Role in Evidence Collection and Retention ................................................... 6

Interview Preparation ................................................................................................ 8

Conducting Interviews ............................................................................................... 8

Determining Credibility ............................................................................................. 8

Drug Testing ................................................................................................................. 8

Blood Borne Pathogen Risk ...................................................................................... 10

Administrative Leave ................................................................................................. 10

Investigational Conclusions ..................................................................................... 10

Unconfirmed Drug Diversion ...................................................................................... 10

Confirmed or Highly Suspected Drug Diversion ....................................................... 10

Reporting Procedures ............................................................................................... 11

Employment Actions .................................................................................................. 12

Appendices .................................................................................................................. 13

Appendix A – Documentation and Investigative Report Writing ........................ 13

Appendix B – Evidence Chain of Custody Tracking Form .................................... 14

Appendix C – Interview Question Guide ................................................................ 15

Appendix D - Investigation Tools ........................................................................... 16

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

**Appendix E - Recusal** ........................................................................................................ **17**

**References** ............................................................................................................................. **19**

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

# Purpose

To provide the Drug Diversion Response Team (DDIRT) with an overview of the procedural steps required to identify, assess, investigate and report suspected drug diversion by Mayo Clinic employees, patients, and visitors. The User Guide is intended as a resource when conducting drug diversion investigations. It explains the purpose and establishes the methodology with respect to the initiation and conduct of investigations at Mayo Clinic. It shall serve as the primary guide for the Medication Diversion Prevention Team (MDPT) investigation process.

# Definitions

<u>Conflict of Interest</u>:  A conflict of interest involves the abuse; actual, apparent, or potential, of the trust that people have in professionals. The simplest working definition states: A conflict of interest is a situation in which financial or other personal considerations have the potential to compromise or bias professional judgment and objectivity. An apparent conflict of interest is one in which a reasonable person would think that the professional's judgment is likely to be compromised. A potential conflict of interest involves a situation that may develop into an actual conflict of interest. It is important to note that a conflict of interest exists whether decisions are affected by a personal interest; a conflict of interest implies only the potential for bias, not a likelihood.

There are many varieties of conflicts of interest, and they appear in different settings and across all disciplines. While conflicts of interest apply to a broad range of behaviors and circumstances, they all involve the use of a person's authority for personal and/or financial gain.  Conflicts of interest may involve individuals as well as institutions. Furthermore, individuals, in certain circumstances, may have conflicts occurring on both an individual and an institutional level, as may be seen among members of a Drug Diversion Response Team (DDIRT).  For this reason, it may be necessary for any individual engaging in an investigation to recuse him or herself. Appendix E outlines the expected recusal process for suspected medication diversion prevention investigations.

<u>Drug Diversion</u>:  Intentionally and without proper authorization, using or taking possession of a prescription medication or medical gas from Mayo supplies, Mayo patients, or using Mayo prescription, ordering or dispensing systems. Examples of drug diversion include, but are not limited to:

1. Medication theft
2. Using or taking possession of a medication without a valid order or prescription
3. Forging or inappropriately modifying a prescription
4. Using or taking possession of medication waste (e.g. left over medication)

<u>Drug Diversion Response Team (DDIRT)</u>: The Drug Diversion Response Team (DDIRT) is a multi-disciplinary leadership team that is responsible for investigating all allegations of suspected drug diversion. Allegations of suspected drug diversion may result from verbal, written, anonymous reporting, monitoring/auditing of drug data, and/or suspicious activity.

<u>DDIRT Representative</u>: A member of DDIRT representing the MDPT who works collaboratively with other DDIRT members to investigate reports of suspected drug diversion.

<u>Employee</u>:  Any consulting staff, administrative staff, allied health staff, fellow, resident, student, volunteer, contract worker, or individual who has received an appointment at Mayo Clinic.

<u>Evidence</u>: Any type of proof which may help establish a fact, or the truth of a statement, that is material to a case or investigation.  It includes, but is not limited to, oral and written statements from complainants, subjects or witnesses; audit results, documents, notes, system reports (e.g., Pyxis data), audio/video recordings, photographs and/or results from reasonable cause drug screening or drug assay.

<u>Extended family members</u>: aunt/uncle, cousin, niece/nephew, and other family members as not defined above

<u>Immediate coworker:</u> any individual that resides within the same reporting unit

<u>Immediate family members</u>: mother, father, daughter, son, spouse, sister/brother-in-law, stepparent, grandchild, daughter/son-in-law, stepdaughter/son, legal ward, grandparent-in-law, and stepbrother/sister

<u>Investigations</u>:  An investigation is a thorough search for facts, especially those that are hidden or need to be sorted out when an unusual circumstance is reported involving controlled substances, medications (or items) not listed but treated as a controlled substance, or a suspected drug diversion situation exists. There are several ways to initiate an investigation. These are detailed in the "Preliminary Investigation" section of this manual. There are four levels of investigations. The Investigations Scoring Tool will be used by the MDPT to determine the level of investigation. The MDPT has authority to recommend a higher level of investigation based on findings. This tool is built into Resolver case management and available in Appendix D as a reference.

<u>Reasonable Suspicion:</u>  A basis for forming a belief based on specific facts and rational inferences drawn from those facts.

<u>Reasonable Cause</u>:  A state of facts found to exist that would warrant a reasonably intelligent and prudent person to believe that a person has violated state or federal drug laws or regulations.

<u>Reasonable Belief</u>:  Exists when there is a reasonable basis to believe that a policy violation or crime is being or has been committed. Reasonable belief is a subjective standard.

<u>Subject</u>:  A person identified for investigation of suspected diversion activity.

# Disclosure of Conflict of Interest

Prior to the opening of an investigation or immediately upon being made aware, any associated individual who has an actual or potential conflict of interest must promptly disclose this to the Director of Medication Diversion Prevention, or his/her designee. Director will review the disclosed conflict of interest and take any action(s) deemed required or appropriate to manage or resolve the matter, including referral to the Medication Diversion Prevention Subcommittee and Mayo Clinic Integrity and Compliance office as appropriate. Appendix E outlines steps for recusal. Unless communicated through this process, the committee assumes no conflict of interest to disclose for all participants of the investigation.

# Initial Intake

The Drug Diversion Response Team (DDIRT) is responsible for investigating all allegations of suspected drug diversion. Allegations may result from verbal, written, or anonymous reports, monitoring/auditing of drug data, and/or suspicious activity.  The Investigation Trigger Tool shall be used as a consistent method to determine if an incident warrants further investigation. This tool is built into Resolver case management and available in Appendix D as a reference.

# Preliminary Investigation

Upon notification of suspected drug diversion, the DDIRT Representative will initiate a preliminary investigation and perform the following activities:

- Promptly evaluate allegations of suspected drug diversion and determine relevant facts
  - Identify key issues
  - Identify potential subjects
  - Identify potential witnesses
  - Determine when, where and how the alleged incident occurred
  - Assess level of risk for patient harm

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*
- 2 -

Confidential

Mayo-Jacksonville_006345

- Gather and review evidence
  - Determine if there is "missing" or unaccounted medication
    - Evaluate other possible locations of unaccounted medication
    - Review alternative sources for locating unaccounted medication:
      - Physical inspection and review of Automated Dispensing Cabinet (e.g., Pyxis) and report data
      - Physical inspection and review of CII Safe and report data
      - Review of diversion surveillance software
      - Assess any reporting and trends in the case management system
      - Perform Medication Audits, as necessary
      - Review documentation sources, such as:
        - Electronic Health Record (EHR, e.g., EPIC),
        - Medication Administration Record (MAR),
        - Alternative paper or other computerized systems where data is not electronically captured in the EHR or MAR
        - Pharmacy records, invoices, receipts
        - Electronic Audit Trails
        - Infusion Pump Histories
        - Prescribing systems, if applicable
      - Review Security-based surveillance data, such as:
        - Background check
        - Camera/video review
        - ID badge access
  - Obtain physical evidence (sharps container, patient room, etc.) maintaining chain of custody
  - Conduct Employment/File review
    - Obtain relevant information from subject/employee supervisor
    - Evaluate subject/employee work schedule and attendance
    - Evaluate complaints or reports of subject/employee behavioral or conduct concerns
    - Evaluate if subject/employee has been the subject of prior investigations or incidents
    - Verify professional license is current and no disciplinary action noted through state board or for nurses, can search via National Nurse License Verification

- Determine relevant facts, such as "who, what, when, where, and how" an event is believed to have occurred and whether those facts support a reasonable suspicion of drug diversion

Upon notification of suspected drug diversion, the subject/employee supervisor will perform an initial safety assessment according to the Drug Diversion Reporting and Response policy, and assess the following:

- Determine whether any patient has been harmed or placed at risk of harm, and take appropriate action to treat the patient or remove the risk of harm
- If a patient has been harmed or placed at risk of harm, the supervisor will notify the patient's primary staff physician
- Determine whether the suspected drug diversion involved an impaired employee or witnessed drug use by an employee. If so, the supervisor should follow the procedure for managing an impaired employee.
  - Substance Abuse and Drug/Alcohol Testing Policy
- Except as directed by the DDIRT Representative or as necessary to conduct the initial safety assessment, the supervisor will not interview the individual suspected of drug diversion

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 3 -*

If inappropriate access, use, or disclosure of protected health information is suspected, immediately contact the Privacy Office to conduct a separate privacy investigation by submitting an intake form here. They have 60 days from the date of suspected or known breach to complete the process, so it's important we notify them right away.

After the preliminary investigation, if reasonable suspicion of drug diversion exists, the DDIRT Representative should assemble available regional diversion coordinators and present the case to solicit feedback.  Once consensus is gained to move forward, DDIRT representative will convene DDIRT and make the following notifications:

**Preliminary Notifications**

| If suspected diversion involves | Required notifications |
|---|---|
| Mayo Employee | 1. Legal Department<br>2. Employee's Supervisor<br>3. Employee's Human Resources (HR) Service Partner<br>4. Local DDIRT Chair<br>5. Director of Pharmacy |
| Mayo fellow, resident or student | 1. Legal Department<br>2. Dean or Administrator of appropriate School<br>3. Local DDIRT Chair<br>4. Director of Pharmacy |
| Patient | 1. Legal Department<br>2. DDIRT (as needed)<br>3. Local DDIRT Chair<br>4. Director of Pharmacy |
| Patient who is also a Mayo employee | 1. Legal Department<br>2. Notification Exception:<br>    • Suspected diversion *should not* be shared with the employee's Supervisor or HR Service Partner without approval from the Legal Department<br>3. Local DDIRT Chair<br>4. Director of Pharmacy |
| Patient who is also a Mayo fellow, resident, or student | 1. Legal Department<br>2. Notification Exception:<br>    • Suspected diversion *should not* be shared with the Dean or Administrator of the School without approval from the Legal Department<br>3. Local DDIRT Chair<br>4. Director of Pharmacy |
| Visitor | 1. Legal Department<br>2. Any other resources necessary to assist in the investigation.<br>3. Local DDIRT Chair<br>4. Director of Pharmacy |

# Initial DDIRT Review

DDIRT Representatives are responsible for initiating preliminary investigations.  After the preliminary investigation, if reasonable suspicion of drug diversion exists, the DDIRT Representative will convene the DDIRT.

- DDIRT will review the preliminary investigation to determine if there is reasonable suspicion of drug diversion and determine next steps, which may include further investigation, additional surveillance, or interviews.
- DDIRT will manage the investigation of all reports of suspected drug diversion
- DDIRT will determine the scope of investigation and assign related tasks and duties

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

- DDIRT will identify, coordinate, and oversee investigational resources, such as the primary investigator/DDIRT Representative and incorporate Subject Matter Experts (SME) or other resources, as necessary

DDIRT Representatives are responsible for coordinating DDIRT investigations and working collaboratively with others to complete all DDIRT investigative assignments and reporting requirements.

- If the DDIRT concludes that drug diversion has occurred or probably occurred, the DDIRT will notify the Legal Department for internal reporting pursuant to the Integrity and Compliance Office Notification of Leadership Regarding Extraordinary Events (NOEE) process.
- The Legal Department will notify the appropriate billing department to determine whether modifications should be made to bills related to affected medical care.

(Note: Mayo Legal may assess diversion investigations on a case-by-case basis to determine if Quality Improvement/Quality Assurance, Attorney-Client or Work-Product Privileges are applicable)

| DDIRT Representative | 1. Initiate a Preliminary Investigation<br>2. Gather facts and collect evidence (See Evidence Procedures)<br>3. Open a Case file in the Case Management System<br>4. Document all relevant information<br>5. Communicate results from the preliminary investigation to DDIRT to determine if there is reasonable suspicion of drug diversion<br>6. Coordinate the completion of DDIRT investigative assignments<br>7. Thoroughly document all elements from the investigation in the Case Management System, including investigative outcome, internal and external reporting, and any corrective/disciplinary actions or recommendations<br>8. Prepare an Investigative Report/SBAR and finalize documentation in the Case Management System; close and archive completed cases<br>9. Notify Legal for subpoenas received from external agencies or Law Enforcement |
|---|---|
| DDIRT | 1. Review results from the preliminary investigation and determine next steps, such as the scope of the investigation and whether additional resources or SMEs are needed<br>2. Determine if drug diversion is confirmed/highly suspected or unconfirmed<br>3. Distribute a report of each incident of drug diversion to the designated individuals at all Mayo sites across the Enterprise through the NOEE process. Ensure submission of reports to applicable regulatory agencies.<br>4. Evaluate all incidents of drug diversion to determine whether additional external reports should be made, such as reports to the Department of Health or Food and Drug Administration (FDA)<br>5. Report of diversion will be made to local law enforcement but will not disclose patient information, medical history, diagnoses, or condition. Legal will recommend redactions to documentation as appropriate<br>6. Maintain and report quarterly metrics to the Medication Diversion Prevention Subcommittee, leadership and/or other committees, as required |

# Evidence Collection

Investigative facts and evidence may be gathered from interviews, witness statements, subject statements, admission statements and/or confessions to conduct, such as drug diversion. Evidence may be obtained from electronic sources, documentation systems, and paper-based files.  Evidence may also be obtained from persons who

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

- 5 -

Confidential                                          Mayo-Jacksonville_006348

report suspected drug diversion, subject/employee supervisors, patients, family members or visitors.  Self-reports by a subject/employee or others, may also be a source of evidence.

Physical evidence, such as medication, syringes, vials, sharps containers, drug supplies, or paraphernalia should be collected and maintained according to Evidence Collection procedures.  Evidence collection and its secured storage location should be carefully managed by the DDIRT Representative/team

**All evidence should be thoroughly documented in the Case Management System.**

<u>**Roles in Evidence Collection**</u>

Supervisors who witness or receive reports of suspected drug diversion should be advised to:
- Perform a safety/risk assessment, according to the Drug Diversion Reporting and Response policy
- Preserve any potential evidence, such as medication vials, syringes, and/or drug supplies (e.g., IV/infusion tubing)
- Quarantine infusion pump to gather infusion history if applicable

The Supervisor should not engage in any additional evidence collection or investigation without consulting the DDIRT Representative.

<u>**DDIRT Role in Evidence Collection and Retention**</u>

The DDIRT Representative will take control of all evidence and establish Chain of Custody for Physical Evidence by using the Mayo Evidence Chain of Custody Tracking Form (See Appendix B)

Evidence collection should include:

- A two-person witness process, to handle physical evidence
- A detailed description of the physical evidence that is recorded on the Chain of Custody Form
- Documentation of evidence type, source, and location in the Case Management System
- Documentation of evidence location and where it was:  1) originally found 2) collected and 3) is stored/secured
- *Note: If possible, photographs should be taken for evidence collection*

Physical evidence should be:

- Secured in a tamper-proof, plastic storage bag that is labeled and signed by witnesses with a permanent marker
- Stored in a Security safe or locked cabinet, with limited access by others
- Storage of schedule II-V evidence will comply with policies on controlled substances storage and handling
- Retained in a secure storage area ("quarantine") designated by the DDIRT
- Maintained via a confidential retention process
- Documented in the Case Management System

Physical evidence may be turned over to Law Enforcement for criminal prosecution

- Security is responsible for the retention of evidence that may be collected by Law Enforcement
- If Law Enforcement collects physical evidence from Mayo Clinic, a Security Officer or the DDIRT Representative should photograph any evidence prior to releasing it to Law Enforcement and maintain photos in the case management system case file.  *Note: Photographs should also be uploaded in the case management system.*

**Evidence Collection and Retention procedure**
- Electronic information is retained indefinitely within the Case Management System, such as:
  - Certificates of Analysis (COAs) (for laboratory samples and drug assay)
  - Investigative files and reports
  - Photos, video surveillance, and
  - Documentation of destruction of any physical evidence such as medication or paraphernalia (include what was destroyed, date, time and manner of destruction, participants/witness names)
    - Do not destroy or dispose of physical evidence until investigation and findings are complete

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*
- 6 -

Confidential                                    Mayo-Jacksonville_006349

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

- Prior to destruction of physical evidence,
  - Confirm no additional need for physical evidence
  - Confirm appropriateness of destruction method with pharmacy leadership
  - Confirm any required documentation with pharmacy leadership (for schedule II-V meds)

- Written Statements/Admission Statements of Diversion
  - Subject Written Statement:
    - A Written Subject Statement (see Written Statement Template – Appendix D) memorializes in the subject's own handwriting, what the Subject has verbalized during the interview.
    - This information may be used, in the future, to validate the Subject's verbal statements, recall of events, and actions (their "story")
    - The Written Statement shall be reviewed while the Subject is present, and prior to obtaining any signatures on the document
    - The Written Statement shall be dated and signed by the Subject and a witness, who is present
    - This document may be subpoenaed by regulatory agencies, or for court proceedings

  - Witness Written Statement:
    - A Witness Written Statement documents the witness's observations and description of events, in their own words
    - The written statement may be used, in the future, to validate the Witness's observations, recall of events and actions (their "story")
    - The Witness Written Statement shall be dated and signed by the Witness
      *Note: An email with electronic signature, and date/time stamp will also suffice*
    - This document may be subpoenaed by regulatory agencies or for court proceedings

  - New Information or Revised Statements:
    - A witness or Subject may provide new information or additional details after an oral interview
      - The original written statement should be reviewed by the DDIRT Representative, in the presence of the witness or Subject, to clarify new information or statement revisions
      - Ask questions to elicit details regarding the new information or statement revisions
      - Ask the Subject or Witness to prepare a revised written statement (including new date, time & signatures)
      - Note any changes or omissions made from the original written statement that was prepared during the initial interview
      - Ask the writer to make a note of any changes or omissions to their original statement and reference those changes in their revised written statement
      - Attach all revised statements to the original statement
      - Maintain all document copies
      - Do not alter, discard, or destroy any original source documents when revisions are made

- Written Statements should be maintained in the investigative file by the DDIRT Representative. Subjects are not allowed to physically remove the document or take it with them for further review or revision.

- All Written Statements should be electronically scanned and uploaded into the Case Management System

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

## Interview Preparation

- Collect documentary and physical evidence prior to performing Subject/Witness interviews
- Determine interview participants *(Note: There should always be at least two persons present during an interview; if possible, one person should be designated to record the interview as a "note taker")*
- Limit the number of participants at an interview so the Subject/Witness is not overwhelmed
- Interview participants include the following:
    - Security (non-uniformed to avoid additional subject intimidation)
    - Medication Diversion Prevention Coordinator/Manager
    - Human Resources
    - Subject

- Determine interview date, time, and location
    - Interviews should be conducted in a quiet, confidential space
    - Interviews should not be conducted on or near a Subject's work unit

- Prepare a List of Questions (See Appendix C - Interview Question Guide)
    - For Subjects
    - For Witnesses

## Conducting Interviews

- The DDIRT Representative should ensure that sufficient evidence has been collected prior to conducting a formal interview of the Subject
- Conduct witness interviews
- Conduct Subject interview
- Thoroughly document responses in the investigative file notes and record the information in the Case Management System
- Conduct additional interviews as needed and clarify receipt of new information and/or evidence

## Determining Credibility

Investigators must consider the credibility of the individuals being questioned during an investigation:

- Determine if there are conflicting versions of the reported incident(s)
- Assess the person's explanation
    - Is it plausible?
    - Do the answers make sense?
    - Is there other evidence or a plausible explanation for what occurred or was alleged?
- Did other statements or observations corroborate the allegation?
- Did other statements or observations refute the allegation?
- Did the alleged Subject have a history of similar allegations or behavior?

## Privacy Considerations for DDIRT Investigations

Consider whether the Privacy Office needs to be engaged to investigate potential inappropriate access, use, and/or disclosure of protected health information (PHI). If there is any indication that the subject may have accessed, acquired, or used PHI outside the scope of their job for purposes of identifying a diversion opportunity, contact the Privacy Office. Examples include, if the subject has access to systems storing PHI or

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 8 -*

Confidential                                                                Mayo-Jacksonville_006351

access to areas where PHI is available but not needed to perform job responsibilities. Contact the Privacy Office by submitting an intake form <u>here</u>. Include relevant documentation (examples include emails, reports, interview notes etc.) and information available at the time of submission.

Potential questions to determine unauthorized access or use:

- In your role, do you access protected health information to perform you job duties?
  - What systems do you access? What information do you review?
- How do you identify which patients you are assigned to or need to work with?
- Do you ever access information without documenting or taking action in the system?
  - What type of information do you view? How often does this occur?

If the subject confirms diversion activities:

- Did you ever <u>intentionally</u> access, use, or acquire PHI <u>outside the scope of your job</u> to identify diversion opportunities?
  - When did you begin doing this? Do you recall patient names or any other patient identifiers or clinical information about individual patients? How did you identify these patients and what did you access? Did you ever document on these patients? What did you document?
- How many patient EHRs do you review each day as part of your current job and how many patient EHRs did you review for diversion opportunities?
- What did you do with the information you reviewed?
- Did you print anything, did you write down anything or make notes, take screenshots or pictures, or keep the information anywhere (names, room numbers, any other information from the chart, etc.)? If yes, what did you do with this information?
- Did you share the information with any other individuals? Who?

# Drug Testing

- Suspected drug diversion may result from witnessed drug use or an employee who appears to be impaired
- If an employee is suspected of being impaired on duty, the subject/employee's supervisor should be notified immediately
- The supervisor will follow the applicable policy for managing an impaired employee:
  - <u>Substance Abuse and Drug/Alcohol Testing Policy</u>
  - <u>Mayo Clinic College of Medicine Alcohol, Drug and Chemical Abuse Policy</u>
- DDIRT may initiate drug testing for reasonable suspicion.  However, careful consideration should be given before proceeding and may be dictated by state law.
- Site specific manager resources for <u>Employee Substance Abuse and Drug/Alcohol Impairment and Testing</u> can guide those managing the process, both during and after business hours.
- Employees or students, who are drug tested for reasonable suspicion, will be accompanied to Occupational Health Services by their Supervisor/HR Service Partner or Dean/Administrator
- Employee leadership will complete the Supervisors Observations and Report for Reasonable Suspicion Determination form (link above) when testing for suspected impairment or reasonable suspicion.
- When a drug screen is obtained for reasonable suspicion an "Expanded Healthcare Panel" should be ordered.
  - The expanded panel will include testing for commonly abused/diverted drugs including synthetic opioids (e.g., oxycodone, hydrocodone, hydromorphone, morphine, and fentanyl)
  - The team should ensure that the substance being tested for is on the drug panel
- Refusal of a drug screen is grounds for corrective action, up to and including termination
- After deliberation with HR and supervisor, an employee who confesses diversion activities and wishes to receive treatment may be offered a Last Chance Agreement when appropriate or may be offered treatment options (varies by state).  Legal should be consulted for these situations.

---

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

- 9 -

Confidential                                                                                          Mayo-Jacksonville_006352

# Blood Borne Pathogen Risk

If it is determined that the Subject diverted intravenous medications or if there are other concerns for patient safety, a blood sample can be requested to determine the presence or absence of Blood Borne Pathogens (BBP). BBP testing includes Hep B, Hep C, and HIV. It is recommended that BBP testing occur at the same time as drug testing to avoid call backs for additional testing during administrative leave.

# Administrative Leave

If the decision is made to place the employee on administrative leave pending further investigation, the employee's access shall be suspended. Temporary suspension is selected via this form: <u>Termination & Re-Enable Requests | ServiceNow (service-now.com)</u>. This creates a High Priority Incident Ticket assigned to IDAML2 team. They will immediately disable the employee's LANID and remove remote access capabilities. Once complete, the employee will be unable to access any EHR or other electronic access (including Pyxis).

The subject's LANID will not be re-enabled unless the form is submitted again, this time choosing "Re-Enable from Temporary Suspension". The requestor may also choose "Permanent Termination" if the investigation is complete and ends in the decision to terminate. Refer to the knowledge base article for more information about Immediate Terminations, Temporary Suspensions, and Access Re-Enablement after Suspension.

<u>KB0026115  Immediate Termination request by Supervisor. (Termination, Temporary Suspension</u>

# Investigational Conclusions

Once the investigation is complete, DDIRT shall establish consensus on whether drug diversion occurred.

<u>Unconfirmed Drug Diversion</u>
- o If DDIRT is unable to determine that drug diversion occurred because the evidence is inconclusive, DDIRT may recommend further preventive measures, such as training and/or monitoring
- o Example follow up for unconfirmed (no need to reconvene):

  *This email serves as an update to our DDIRT Meeting on ____.  Urine Drug Screening and Blood Borne Pathogen results for the RN were NEGATIVE.  There was no suspicious activity identified in an Audit of the RN's controlled substance handling.  Based on investigative findings, suspected drug diversion was unconfirmed.*

  ***Please use voting buttons to "Approve" or "Reject" the investigative findings (diversion unconfirmed) with a recommendation for the RN to "Return To Work."*** *H.R. will work with Nursing Leadership to determine if Corrective Action for practice concerns is warranted.  If the majority of DDIRT members do <u>not</u> approve this recommendation, a second DDIRT meeting can be scheduled for further discussion.*

- o DDIRT will communicate the investigative outcome to the appropriate Supervisor and Human Resources (HR) Service Partner, or Dean or Administrator of the appropriate School (fellow, resident, or student)

<u>Confirmed or Highly Suspected Drug Diversion</u>
- o If DDIRT concludes that drug diversion has occurred or probably occurred, an investigative report should be drafted and provided to the Legal Department.  The DDIRT representative will collaborate with legal to

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 10 -*

Confidential                                                                 Mayo-Jacksonville_006353

initiate internal reporting pursuant to the Integrity and Compliance Office <u>Notification of Leadership Regarding Extraordinary Events (NOEE)</u> policy. A review will be conducted to determine if any patient's bill was affected by the suspected diversion.

- If DDIRT determines that that drug diversion is likely to have affected a patient's bill, legal will notify the appropriate billing department, to determine whether modifications should be made to bills related to affected medical care

o DDIRT will communicate the investigative outcome to the appropriate Supervisor and Human Resources (HR) Service Partner (employee), or Dean or Administrator of the appropriate School (fellow, resident, or student)

o If employment is terminated, the Subject's access to Mayo Clinic systems will be revoked (e.g., badge access, Pyxis, and/or computer access).  Keys, computers, pagers, and phones should be returned to Mayo Clinic.

o DDIRT will initiate external reporting to Law Enforcement, Licensing Board and Other Government Agencies based on consensus of DDIRT (see reporting procedures)

# Reporting Procedures

## Leadership Reporting

Mayo Leadership will receive prompt notification of incidents of probable drug diversion.

## Reporting to Law Enforcement, Licensing Boards and Other Government Agencies

- DDIRT representative will complete a Significant Loss Calculation Assessment (Appendix D) to determine if a significant loss criterion was reached
- If there is a significant loss of controlled substance, the Director of Pharmacy or designee will ensure that appropriate reports are made to the Drug Enforcement Administration (DEA) and the Board of Pharmacy (per state law) within one business day
- If a Mayo Clinic employee, patient, or visitor is determined to have committed drug diversion, law enforcement will be notified. DDIRT will confirm who is responsible for reporting to law enforcement and when this shall occur.  Mayo Clinic will not disclose any patient identifiers including but not limited to name, medical record number, address, medical history, condition, diagnoses, or treatment.
- The following individuals (or designee) will report drug diversion by licensed or registered health care providers to the appropriate State licensing board:
  o The Chair of the Department of Nursing will report drug diversion by nurses
  o The Chair of the Personnel Committee will report drug diversion by staff physicians
  o The Dean of the applicable school will report drug diversion by fellows, residents, or students
  o The applicable Supervisor or other departmental leader will report drug diversion by all other licensed or registered health care providers
- DDIRT will evaluate all incidents of drug diversion to determine whether additional external reports should be made, such as reports to the Department of Health or Food and Drug Administration.

## Patient Notification

- If patient harm has resulted from medication diversion, DDIRT in collaboration with the Legal Department will determine when the patient should be informed of the circumstances of the drug diversion and its impact on the patient.  The patient's primary physician will be responsible for ensuring that this communication occurs
- If drug diversion is confirmed but it is unclear whether the diversion caused patient harm or placed one or more patients at risk of harm, DDIRT in collaboration with the Legal Department and Mayo Leadership will determine whether patient notification will serve the best interests of potentially affected patients.

## Collection, Analysis and Sharing of Drug Diversion Data

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 11 -*

Confidential                                                          Mayo-Jacksonville_006354

- Drug Diversion cases are shared and discussed among DDIRT Representatives on a regular basis. The Medication Diversion Prevention Subcommittee will analyze and summarize drug diversion data to identify trends and opportunities for potential improvement in medication use processes.

# Employment Actions

- Employment and/or Disciplinary Action will be managed by the appropriate supervisors and administrators in conjunction with Human Resources.
- If an employee is determined to have committed drug diversion, the employee will be subject to corrective action.  In most cases the expected outcome will be termination of employment or dismissal from the applicable school or training program. Such action will be taken regardless of whether the diversion occurred within the scope of employment or training, or while the employee was off-duty as a patient or visitor.
- Termination or dismissal due to drug diversion will be recorded in the employee's personnel file or educational file.  The specific reason for dismissal will be shared with prospective employers or educators who contact Mayo with appropriate authorization.
- For any suspected or confirmed diversion, the date or expected date of corrective action or termination is required in the NOEE.

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 12 -*

Confidential                                    Mayo-Jacksonville_006355

# Appendices

## Appendix A – Documentation and Investigative Report Writing

The investigator should document and record all elements of the investigation thoroughly, including any findings or steps taken during the investigation.

- Investigators should ensure their notes are as factual as possible and contain relevant information
- Each document should contain a title, date, time, location and names of participants involved
- Investigators should get copies of any other notes taken, to add to the case file
- All interviews should be documented thoroughly (Subject, Reporter/Accuser, and Witness)

The investigator should prepare an Investigative Report to record a factual written summary of the incident(s) and the investigative process.

- An Investigative Report will be prepared for DDIRT meetings to summarize the status of the preliminary and/or DDIRT initiated investigation(s).  Reports will be prepared and distributed as confidential documents, although typical investigations do not constitute attorney client privilege.

A final Investigative Report ("I.R.") will be prepared by legal at the completion of the investigation.

- The goal of the I.R. is to ensure that if a court, jury or government agency were to review it, the reviewers would conclude that the employer took the situation seriously, responded immediately and appropriately, and had a documented good-faith basis for any actions taken during or as a result of the investigation

The I.R. should include the following:

- The incident or issues investigated, including date and time
- Parties involved
- Key factual and credibility findings
- DDIRT Meeting summary of investigative plan and recommendations
- Mayo Policies, Procedures or guidelines and their applicability to the investigation
- Specific conclusions
- Final determination by DDIRT
- Results of any reasonable cause ("for cause") drug testing
- Employment actions taken
- Internal and External Reports, including date and time

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*- 13 -*

Confidential

Mayo-Jacksonville_006356

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

**Appendix B – Evidence Chain of Custody Tracking Form**

**Mayo Clinic**
**EVIDENCE CHAIN OF CUSTODY TRACKING FORM**

Case Number: _____ Allegations: _____

Receiving Individual: (Name/ID#) _____

Owner: _____

Suspect: _____

Date/Time Obtained: _____

Location Obtained: _____

| Description of Evidence or Personal Property | | |
|---|---|---|
| Item # | Quantity | Description of Item (Model, Serial #, Condition, Marks, Scratches) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| Chain of Custody | | | | |
|---|---|---|---|---|
| Item # | Date/Time | Released by (Signature & ID#) | Received by (Signature & ID#) | Comments/Location |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

## Appendix C – Interview Question Guide

Questions for the "Accuser" or Complainant

Determine Facts:  Who, What, When, Where, and How
- Who committed the alleged incident?
- What did they observe or hear?
- When did the incident occur?
- Where did the incident occur?
- How did the incident affect them or others?
- Did the incident affect anyone?  (e.g., patient(s), family members, staff or visitors?
- What was their response to the incident?
- Was anyone present when the incident occurred?
- Were there any other people who witnessed the incident?
- Did they "tell anyone" about it?  Did anyone else speak about it?
- Are there any notes, physical evidence, or other documentation regarding the incident?
- Do they know of any other relevant information?

Questions for the Alleged Subject

- Provide detailed allegations to the accused to allow complete and fair answers
- What is the Subject's response to the allegations?
- If the Subject claims the allegations are false, ask why the Reporter/Complainant might lie
- Are there any other persons who might have relevant information?
- If an Audit was performed, review the audit in detail and ask relevant questions
- Ask if there are any notes, physical evidence, or other documentation regarding the incident?
- If the Subject denies the allegations, ask them to detail why they believe otherwise
- Always ask the accused if there is anything else they would like to add

Wait to obtain a written statement or confession from the Subject until the final allegations are clear and the investigation is complete.

Questions for Witnesses or Third Parties

Determine if there were any Witnesses to the incident
- What did you see or hear?
- When did this occur?
- Describe the alleged incident or the Subject's behavior
- What did the Accuser/Complainant tell them?
- When did s/he tell them?
- Are there other persons who have relevant information?
- Do they know of any other relevant information?

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

## Appendix D - Investigation Tools

1. <u>Investigation Trigger Tool</u>: used by investigators to evaluate if an incident should be investigated

    

    Investigation
    Trigger Tool.docx

2. <u>Investigations Scoring Tool</u>: used by investigators to score total impact of event type to define the level of investigation

    

    Investigations
    Scoring Tool.xlsx

3. <u>Behavioral Checklist</u>: used by supervisor to assess unsatisfactory job performance of an employee/subject
    <u>Checklist of Unsatisfactory Job Performance - Dec 2022</u>

4. <u>Written Statement Template</u>: used by the DDIRT Representative to memorialize what the subject has verbalized during the interview

    

    Written statement
    form.doc

5. <u>Significant Loss Calculation Assessment</u>: used by the DDIRT Representative to determine if the criteria for a significant loss was reached
    <u>Significant Loss Calculation 08-2023</u>

6. <u>Verify nurse license status</u> via national database – includes RNs, LPNs/VNs, and APRNs
    <u>Nursys®</u>

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

# Appendix E - Recusal

All participants of a suspected diversion investigation shall consider potential conflict of interest (COI) and need for recusal.

The list below provides guidance when considering recusal:

1. Medication diversion employees may be required to consider recusing from an investigation to avoid a COI or the appearance of a COI.
2. Medication diversion employees are responsible for knowing when recusals are required, but they do not need to make this determination alone. They should seek the advice of the Director of Medication Diversion, Mayo Clinic legal counsel or an in-house ethics consultation service when considering whether recusal is appropriate.
3. A recusal is appropriate when a COI exists between an employee's job duties and financial interests (including interests in future employment) or certain business or personal relationships or outside activities.
4. Employees who think they might need a recusal should seek assistance from leadership before participating in any part of the investigation.
5. Employees are strongly encouraged to document their recusals in writing. Although recusals do not need to be in writing to be valid, as a general principle, a written recusal helps clarify the scope of the recusal both for the employee and those who need to be aware of the recusal. Seek guidance from an ethics official to assist in preparing a written recusal.
6. Once an employee recognizes the need to recuse him or herself from participating in a particular investigation to which he or she has been assigned, the employee should notify the person who assigned the matter. If the employee is responsible for his or her own assignments, the employee should take whatever steps are necessary to ensure that he or she does not participate in the matter.
7. Recusals are required in several specific situations:
   a. When a MDPT employee's position would cause him or her to work on a matter that will have a direct and predictable effect on his or her own personal interests or the personal interests of an entity whose interests are imputed to the employee
   b. When a MDPT employee is working on a particular matter involving specific parties, a reasonable person with knowledge of the relevant facts would question the employee's impartiality, and
      i. the matter is likely to have a direct and predictable effect on the personal interests of the employee's household, or
      ii. the employee knows that a person with whom he or she has a "covered relationship" is or represents a party to the matter
   c. When an employee participating in the investigation/DDIRT has received an extraordinary payment from a former employer (person of interest) prior to the employee's involvement in the investigation
   d. When seeking other employment
   e. When an employee has an arrangement concerning prospective employment
   f. When an employee's participation in a matter could create an appearance problem; and
   g. Out of an abundance of caution.
8. Once the employee has requested recusal from an investigation, the employee must not view or access any investigation documentation in the case file.
9. Other employees within the MDPT (including DDIRT) must take reasonable means to avoid disclosing investigative information to the recused employee

If the need to recuse is identified, follow the process outlined below. If unsure based on the above examples, communicate directly with the Director Medication Diversion Prevention to clarify.

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

For recusal, employee shall send an email to the Director Medication Diversion Prevention and include the following information:

- The email title should be "Request to Recuse"
- The email message should indicate specific identifying information for the investigation in which the employee is requesting recusal
- If the prime focus of the investigation is an immediate or extended family member, the employee should indicate such.
- If the employee is recusing himself/herself from the investigation due to a potential COI, the employee may indicate such but is not required to disclose specific information.

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*

- 18 -

Confidential                                          Mayo-Jacksonville_006361

*Medication Diversion Investigations – Medication Diversion Prevention Subcommittee*

# References

1. Conducting Internal Investigations in Health Care Organizations by Richard P. Kusserow ISBN: 978-1-936230, Published 2011 by Atlantic Information Systems
2. Drug Diversion Reporting and Response, Mayo Clinic Policy/Procedure http://mayocontent.mayo.edu/medctnmngmnt/DOCMAN-0000124217?qt=Drug Diversion Reporting and Response
3. Diversion of Drugs Within Health Care Facilities, a Multiple-Victim Crime: Patterns of Diversion, Scope, Consequences, Detection, and Prevention. Berge, K.H., Sikkink, K.M., Taylor, T.K., and Lanier, W.L. Mayo Clinic Proc. 2012 Jul: 87(7):674-682
4. How to Conduct an Investigation.  SHRM.org (accessed online 10/4/18). https://www.shrm.org/resourcesandtools/tools-and-samples/how-to-guides/pages/howtoconductaninvestigation.aspx
5. Uniform Principles and Guidelines for Investigations, adopted by the 10th Conference of International Investigators (June 2009)
6. HR Connect - Employee Substance Abuse and Drug/Alcohol Impairment and Testing (service-now.com)

*All information contained in this user guide is confidential. Distribution of this information is restricted to only those persons responsible for Mayo Clinic's Medication Diversion Prevention investigation efforts.*