# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| **JAMES C. WALDORF, M.D.**, | |
| *Plaintiff*, | |
| v. | Case No. 3:24-cv-00657 |
| **MAYO CLINIC**, *a Minnesota non-profit corporation;* **MAYO CLINIC JACKSONVILLE,** *a Florida non-profit corporation; and* **MAYO CLINIC FLORIDA,** *a Florida non-profit corporation* | |
| *Defendants*. | |

## DEFENDANT MAYO CLINIC JACKSONVILLE'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, MAYO CLINIC JACKSONVILLE ("Defendant"), by and through its undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby serves its responses to the First Set of Interrogatories propounded by Plaintiff, JAMES C. WALDORF, M.D. ("Dr. Waldorf" or "Plaintiff").

## PRELIMINARY STATEMENT

Defendant has not completed its investigation relating to this action, has not completed discovery in this action, and has not completed

preparation for trial. As discovery proceeds, responsive facts, information, evidence, documents, and things may be discovered that are not set forth in these responses. These responses, therefore, are based on the best information known and available at this time. Furthermore, these responses were prepared based on Defendant's good faith interpretation and understanding of Plaintiff's interrogatories and are subject to correction for inadvertent errors or omissions, if any. Defendant reserves the right to amend or supplement these responses if Defendant obtains other or additional information.

Defendant reserves the right to refer to, to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in these responses.

Defendant reserves all objections as to the relevancy and materiality of any and all interrogatories and of any and all information identified in these responses. Defendant further reserves the right to object to the use of all such information in any subsequent proceedings. Neither the identification of nor the production of documents shall be construed as an admission by Defendant as to the accuracy of the information contained in

such documents, as to the authenticity of such documents and things, or as to the admissibility of such documents.

Inadvertent production or disclosure of any information or documents that are subject to a privilege shall not waive such privilege and shall not waive the right of Defendant to object to the use of such information, documents, or the content thereof in any subsequent proceeding. Such inadvertent production or disclosure also shall not be construed to waive the right of Defendant to object to discovery with respect to such information or documents, with respect to other information, documents, or things, or the contents and subject thereof, or with respect to any other discovery, on any grounds. Any discrete or limited waiver of the attorney-client privilege, or any other privilege, shall not be construed as a blanket waiver of the privilege. To that end, Defendant objects to the Interrogatories, and each and every instruction and definition therein, to the extent that they seek information concerning communications or other matters protected by the attorney-client privilege, the work product doctrine, the protection afforded to documents prepared in anticipation of litigation, or any other applicable privilege or immunity.

Defendant reserves the right to respond to each of the interrogatories, in whole or in part, by specifying the record(s) from which the answer to each such interrogatory may be derived or ascertained and will afford to

3

Plaintiff a reasonable opportunity to examine, audit, or inspect such
record(s) and to make copies, compilations, abstracts, or summaries thereof.

## REPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1**: Identify every reason for your decision to end Dr. Waldorf's employment, along with the source(s) from which you learned of each reason and every person with direct knowledge of the facts supporting each reason.

**ANSWER**: **Defendant objects to Interrogatory No. 1 to the extent it seeks information protected from disclosure by the attorney-client privilege or any other applicable privilege. Defendant further objects to this Interrogatory because it is vague and ambiguous, particularly as to the phrases "direct knowledge" and "facts supporting." Additionally, Interrogatory No. 1 is overbroad and unduly burdensome in that it seeks information not within Defendant's control, such as the substance of each individual's knowledge, and in that it seeks identification of everyone with "direct knowledge" of the facts underlying the reasons for the end of Plaintiff's employment, which could include all of Defendant's employees with knowledge of Defendant's relevant policies and rules.**

**Subject to and without waiving the foregoing objections, Defendant states as follows: Defendant decided to end Plaintiff's employment because Plaintiff violated Defendant's Drug Diversion Reporting and Response Policy (the "Diversion Policy") when he administered Defendant's Botulinum Toxin ("Botox") to Pamela Lovett without billing for the administration and without documenting the encounter. Answering further, in addition to those providing privileged legal advice, the following individuals have knowledge with respect to the reason for Defendant's decision to end Plaintiff's employment:**

- **James C. Waldorf, M.D., Plaintiff**
- **Pamela Lovett, Former Employee of Defendant**
- **Valerie Clower, Front Desk Staff at Defendant's Cosmetic Center**

- **Maral Artin, Office Manager at Defendant's Cosmetic Center**
- **Alexis Kainz, Operations Administrator of Surgery**
- **Alex Carter, RN**
- **Wayne Hester, Drug Diversion Prevention Specialist**
- **Alissa Voils, Director of Pharmacy Medication Diversion Prevention**
- **Rose Cuenta, Human Resources Investigation Specialist**
- **James Meschia, M.D., Neurologist**
- **Rosemary McMullan, Human Resources Division Chair**
- **Connie Kuenzinger, Human Resources Business Partner**
- **Dr. Fred Kusumoto, Cardiac Electrophysiologist**
- **Tera Gross, Chief Nursing Officer**
- **Elizabeth Ventresca, Pharm D**
- **Mike Ramirez, Drug Diversion Prevention Specialist**

**INTERROGATORY NO. 2:** Identify every rule or policy you contend Dr. Waldorf violated, and the date of the violation, by administering Botox to Pamela Lovett, and state whether you contend each purported violation was a reason for your decision to end Dr. Waldorf's employment.

**ANSWER: Defendant objects to Interrogatory No. 2 as overbroad to the extent it calls for identification of every policy or rule Plaintiff violated, regardless of whether such rules or policies are internal to or monitored by Defendant. For example, rules implemented and enforced by the Florida Board of Medicine. Subject to and without waiving the foregoing objections, Defendant contends that by administering Botox to Pamela Lovett without charge and without documentation, Plaintiff violated the following policies and or rules implemented and enforced by Defendant:**

- **Drug Diversion Reporting and Response Policy;**
- **Code of Ethics and Conduct;**
- **Clinical Documentation: Creation, Completion, and Authentication Policy;**
- **Medication Administration Policy; and**
- **Botulinum Toxin Medications Policy – Florida**

**Answering further, Defendant contends that it decided to end Plaintiff's employment because of his violation of the Drug Diversion Reporting and Response Policy, which occurred in the context of his violation of the other policies listed above.**

**INTERROGATORY NO. 3:** Identify every reason for your decision to end Pamela Lovett's employment, along with the source(s) from which you learned of each reason and every person with direct knowledge of the facts supporting each reason.

**ANSWER: Defendant objects to Interrogatory No. 3 to the extent it seeks information protected from disclosure by the attorney-client privilege or any other applicable privilege. Defendant further objects to this Interrogatory because it is vague and ambiguous, particularly as to the phrases "direct knowledge" and "facts supporting." Additionally, Interrogatory No. 3 is overbroad and unduly burdensome in that it seeks information not within Defendant's control, such as the substance of each individual's knowledge, and in that it seeks identification of everyone with "direct knowledge" of the facts underlying the reasons for the end of Pamela Lovett's employment, which could include all of Defendant's employees with knowledge of Defendant's relevant policies and rules. Additionally, Defendant objects to Interrogatory No. 3 because it seeks information not relevant to the claims or defenses at issue in this lawsuit. Pamela Lovett is not a party to this lawsuit, and thus, Defendant's decision to end Pamela Lovett's employment has no bearing on Plaintiff's claims.**

**Subject to and without waiving the foregoing objections, Defendant states that it decided to end Pamela Lovett's employment based on the circumstances described in response to Interrogatory No. 1. Answering further, in addition to those providing privileged legal advice, the following individuals have knowledge with respect to the reason for Defendant's decision to end Pamela Lovett's employment:**

- **James C. Waldorf, M.D., Plaintiff**
- **Pamela Lovett, Former Employee of Defendant**
- **Valerie Clower, Front Desk Staff at Defendant's Cosmetic Center**
- **Maral Artin, Office Manager at Defendant's Cosmetic Center**
- **Alexis Kainz, Operations Administrator of Surgery**
- **Alex Carter, RN**

- **Wayne Hester, Drug Diversion Prevention Specialist**
- **Alissa Voils, Director of Pharmacy Medication Diversion Prevention**
- **Rose Cuenta, Human Resources Investigation Specialist**
- **James Meschia, M.D., Neurologist**
- **Rosemary McMullan, Human Resources Division Chair**
- **Connie Kuenzinger, Human Resources Business Partner**
- **Dr. Fred Kusumoto, Cardiac Electrophysiologist**
- **Tera Gross, Chief Nursing Officer**
- **Elizabeth Ventresca, Pharm D**
- **Mike Ramirez, Drug Diversion Prevention Specialist**

**INTERROGATORY NO. 4:**  Identify every rule or policy you contend Pamela Lovett violated, and the date of the violation, by receiving Botox from Dr. Waldorf, and state whether you contend each purported violation was a reason for your decision to end Ms. Lovett's employment.

**ANSWER:  Defendant objects to Interrogatory No. 4 because it is overbroad and seeks information without regard to whether such information is relevant to the claims or defenses at issue in this lawsuit. Pamela Lovett is not a party of this lawsuit, and thus, Defendant's contentions as to which policies or rules Pamela Lovett violated have no bearing on Plaintiff's claims. Defendant further objects to Interrogatory No. 4 as overbroad to the extent it calls for identification of every policy or rule Pamela Lovett violated, regardless of whether such rules or policies are internal to or monitored by Defendant. For example, rules implemented and enforced by the Florida Board of Nursing.**

**Subject to and without waiving the foregoing objections, Defendant contends that by receiving Botox from Plaintiff without charge and without documentation, Pamela Lovett violated the following policies and or rules implemented and enforced by Defendant:**

- **Drug Diversion Reporting and Response Policy;**
- **Code of Ethics and Conduct;**
- **Clinical Documentation: Creation, Completion, and Authentication Policy;**
- **Medication Administration Policy; and**
- **Botulinum Toxin Medications Policy – Florida**

**Answering further, Defendant contends that it decided to end Pamela Lovett's employment because of her violation of the Drug Diversion Reporting and Response Policy, which occurred in the context of her violation of the other policies listed above.**

**INTERROGATORY NO. 5:** Identify each employee who, since July 17, 2023, has communicated on your behalf with any governmental organization, including but not limited to the State of Florida and the Florida Department of Health, concerning any conduct of Dr. Waldorf. With respect to each such employee, Identify:

      a.    The date of each communication;

      b.    The substance of each communication; and

      c.    The mode of communication in each instance, e.g., in person, by phone or video, by text or email, by instant message, by correspondence, or by any other mode of communication.

**ANSWER: Defendant states that on August 7, 2023, Dr. James Meschia executed a letter to the Florida Department of Health reporting Dr. Waldorf for administering Botox to a colleague without documenting or billing for the administration. This letter was mailed to the Florida Department of Health on August 7, 2023. On December 12, 2023, a version of this same letter was emailed to the Florida Department of Health by a member of Defendant's legal staff.**

**Answering further, Defendant directs Plaintiff to the documents to be produced in response to Request No. 45 of Plaintiff James C. Waldorf's First Request for Production to Defendant Mayo Clinic of Jacksonville.**

11

**INTERROGATORY NO. 6:**  Identify each employee who, since July 17, 2023, has communicated on your behalf with any governmental organization, including but not limited to the State of Florida and the Florida Department of Health, concerning any conduct of Pamela Lovett. With respect to each such employee, Identify:

a.    The date of each communication;

b.    The substance of each communication; and

c.    The mode of communication in each instance, e.g., in person, by phone or video, by text or email, by instant message, by correspondence, or by any other mode of communication.

**ANSWER:**  Defendant objects to Interrogatory No. 4 because it is overbroad and seeks information without regard to whether such information is relevant to the claims or defenses at issue in this lawsuit. Pamela Lovett is not a party of this lawsuit, and thus, Defendant's reporting of Pamela Lovett's conduct has no bearing on Plaintiff's claims.

Subject to and without waiving the foregoing objections, Defendant states as follows:

•    On or about July 19, 2023, Tera L. Gross, Chief Nursing Officer, communicated with the Florida Department of Health, regarding Lovett's conduct with respect to receiving Botox injections from a Consultant at Mayo Clinic.

•    On or about August 3, 2023, Gross received a letter from Shironda Golden, Investigation Specialist II with the Florida Department of Health, seeking additional information.

12

- **On or about August 16, 2023, Gross responded to Golden's August 3, 2023, letter and provided additional information.**

- **On or about July 19, 2024, Defendant received a letter from the Florida Department of Health advising of the status of the complaint filed in reference to Lovett. The letter advised that the complaint had been reviewed by legal staff and would be sent to a probable cause panel.**

- **On or about September 13, 2024, Gross received a letter from Assistant General Counsel of the Florida Department of Health, Caitlin Harden, advising that the complaint regarding Lovett was closed after a Probable Cause Panel for the Board of Nursing found that probable cause of a violation did not exist.**

**INTERROGATORY NO. 7:**  Identify:

a.    Each employee known to you who used Botox in a manner
       inconsistent with any Defendant's rules or policies from 2018 to
       the present;

b.    The date(s) and facts describing each such employee's use of
       Botox in a manner inconsistent with any Defendant's rules or
       policies; and

c.    The date and substance of any action taken by any Defendant in
       response to each employee identified in your response to this
       interrogatory, including any discipline imposed against each
       such employee.

**ANSWER: Defendant objects to Interrogatory No. 7 because it is
overbroad in that it seeks information pertaining to the rules and
policies of entities that did not employ Plaintiff.**

**Subject to and without waiving the foregoing objections,
Defendant identifies Lorena Costa as an employee who used Botox in
a manner inconsistent with Defendant's Drug Diversion and Reporting
Policy from 2018 to present. Ms. Costa's employment was terminated
in 2018 after Defendant discovered that Ms. Costa administered Botox
to her friends and family in the community and had been
misrepresenting herself as a dermatologist employed by Defendant.
Answering further, see Defendant's response to Interrogatory No. 9.**

14

**INTERROGATORY NO. 8:** With regard to Pamela Lovett, Identify:

a.    the date of each communication she had with you on or after January 1, 2020, regarding the level or amount of her compensation and/or the maximum salary for her position;

b.    each employee with whom she had each such communication; and

c.    the substance of each communication.

**ANSWER: Defendant objects to Interrogatory No. 8 because it is overbroad and unduly burdensome in that it seeks identification of every conversation Lovett may have had with members of Defendant's management regarding her compensation over a three-year period, without regard to whether such conversations are pertinent or relevant to the needs of the case. Interrogatory No. 8 is also unduly burdensome in that it seeks identification of conversations that may have occurred only verbally, and as such, the exact dates of such conversations (if any) may be difficult or impossible to ascertain. Defendant further objects based on relevance because at no point during her employment did Lovett ever raise a complaint or concern indicating a belief that her compensation was somehow based on her sex or gender.**

**Subject to and without waiving the foregoing objections, Defendant made several general comments regarding her pay, as follows:**

• **In roughly Fall 2022, Human Resources Business Advisor Matt McNally spoke with Lovett regarding her compensation. McNally explained to Lovett her compensation was appropriate given her level of experience and explained Defendant's formula for weighting that experience.**

• **In or around October 2022, Lovett spoke with then-Operations Administrator for Anesthesiology and Perioperative**

Medicine, Brandi Moore, regarding her compensation. Lovett indicated that she believed her progression through Defendant's pay range was slowed down due to her division of administrative and clinical responsibilities. Lovett told Moore she believed she would be at or near maximum salary if she were a staff CRNA. Following this interaction, it was reiterated to Lovett that her compensation was appropriate given her level of experience, and Defendant's formula for weighting that experience.

- On December 15, 2022, Lovett emailed McNally, Human Resources Division Chair, Rosemary McMullan, and Human Resources Director, Carrie Campbell, regarding her pay. Lovett stated that she believed she should be at maximum compensation, and that she was thinking about when her pay would "even out" with another CRNA Manager, Richard Pence.

- Moore had several conversations with Lovett in which Lovett reiterated her belief that she should be at "max pay" for her role, based on her experience. Moore repeatedly explained to Lovett that different categories of experience are aged and weighted differently in Defendant's system. Lovett indicated that she was "not good with math" and had trouble understanding the weighted experience concept. Lovett had similar conversations with McNally.

**INTERROGATORY NO. 9:** Identify each employee investigated or disciplined by any Defendant from 2018 to the present for a violation of any rule or policy identified in your answers to interrogatories number 2 and 4 above. For each such employee, Identify the rule or policy violated and the date(s) of the violation(s), and describe the facts constituting the violation(s) and the nature of any discipline imposed.

**ANSWER: Defendant objects to Interrogatory No. 9 because it is overbroad in that it seeks information pertaining to the rules and policies of entities that did not employ Plaintiff and seeks identification of investigations for violations of policies that were not the basis for Defendant's decision to end Plaintiff's employment.**

**Subject to and without waiving the foregoing objections, Defendant states that the following individuals were investigated by Defendant from 2018 to present for suspected violations of Defendant's Drug Diversion and Reporting Policy:**

| Year | Name | Date of Birth | Facts Constituting Violation | Disposition |
|------|------|---------------|------------------------------|-------------|
| 2018 | Lorena Costa | ▆/85 | *See* Defendant's response to Interrogatory No. 7. | Terminated |
| 2021 | Malinda Walker | ▆/95 | Dispensed and personally used Zofran (non-controlled substance). | Terminated |
| 2023 | Jenn Looney | ▆91 | Allowed another RN to administer IV fluids to her. | Written Warning |
| 2023 | Abby Wiley | ▆/88 | Administered fluids to an RN. | Final Written Warning; 3-day suspension; team lead duties |

| | | | | revoked for 1 year. |
|---|---|---|---|---|
| 2023 | Rachel Reich | ████/93 | Stole an unknown amount of Defendant's Seroquel and also took Defendant's prednisone for her father-in-law's use. | Terminated. |
| 2023 | Michael Gossett | ████/94 | DuoNeb was found on employee's person off of Defendant's premises. | Terminated. |
| 2023 | Jessica Eldrige | ████/96 | Allowed an RN to administer IV fluids to her. | Final written warning and suspension. |
| 2023 | Bryce Barber | ████/88 | Administered IV fluids to another RN. | Final written warning and suspension. |

Dated: October 4, 2024          **FOLEY & LARDNER LLP**

*/s/ Larry S. Perlman*
Larry S. Perlman
Florida Bar No. 91934
lperlman@foley.com
lsullivan@foley.com
One Biscayne Tower
2 South Biscayne Blvd.
Suite 1900
Miami, FL 33131
Telephone: (305) 482-8400

John S. Lord, Jr.
Florida Bar No. 16527
jlord@foley.com
avargas@foley.com
One Biscayne Tower
2 South Biscayne Blvd.

18

Suite 1900
Miami, FL 33131
Telephone: (305) 482-8400

Mary Caroline Cravatta
Florida Bar No. 125712
mcravatta@foley.com
ctavarez@foley.com
301 E. Pine Steet
Suite 1200
Orlando, FL 32801
Telephone: (407) 423-7656

McKenzie L. Ahmet
Wisconsin Bar No. 1119284
(admitted *pro hac vice*)
mahmet@foley.com
mmraz@foley.com
150 E. Gilman Street
Suite 5000
Madison, WI 53711
Telephone: (608) 258-4319

**ATTORNEYS FOR MAYO CLINIC JACKSONVILLE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 4, 2024, a copy of the foregoing

was served on all counsel of record, as identified below:

Scott Thomas Fortune
FORTUNE LAW OFFICES, PA.
814 1st Steet N., Suite 100
Jacksonville Beach, FL 32250
sfortune@fortunelegal.com

Michael E. Lockamy
BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
mel@bedellfirm.com

John G. Woodlee
BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
jgw@bedellfirm.com

/s/ *Larry S. Perlman*
Attorney

20

## VERIFICATION PAGE

**MAYO CLINIC JACKSONVILLE**

Connie Kuenzinger
Printed Name

HR Partner-Consultant Staff
Position

Connie Kuenzinger
Signature

**STATE OF FLORIDA**
**COUNTY OF** Duval

The foregoing instrument was sworn to and subscribed before me this 4th day of Oct , 2024, by _____, by means of [X] physical presence or [ ] online notarization, who said upon oath that he has read the foregoing which is true and correct and who is:

    [X]    is personally known to me.

    [ ]    produced a current _____ driver's license as identification.

    [ ]    produced _____ as identification.

{Notary Seal must be affixed}

Notary Public State of Florida
Susan L Morris
My Commission HH 327624
Expires 10/31/2026

Susan L Morris
Signature of Notary

Susan L Morris
Name of Notary (Typed, Printed or Stamped)

_____
Commission Number (if not legible on seal)

_____
My Commission Expires (if not legible on seal)

4860-5361-0729.1